**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALONSO ZARAGOZA and JADHIRA SANCHEZ, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>TAYLOR FRESH FOODS, INC., a Delaware corporation; TAYLOR FARMS CALIFORNIA, INC., a Delaware corporation; and JOHN DOE CORPORATIONS 1-5,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

**<u>COMPLAINT AT LAW</u>**

NOW COME Plaintiffs ALONSO ZARAGOZA and JADHIRA SANCHEZ, by and through their attorneys of record, and for their causes of action against Defendants Taylor Fresh Foods, Inc., Taylor Farms California, Inc., and John Doe Corporations 1-5, complain, allege, and state as follows:

## I. PARTIES

1. Plaintiff Alonso Zaragoza (hereinafter “PLAINTIFF ZARAGOZA” or Mr. Zaragoza) is now, and was at all times material to this Complaint, an adult resident and citizen of Chicago, Cook County, Illinois.

2. Plaintiff Jadhira Sanchez (hereinafter “PLAINTIFF SANCHEZ” or Ms. Sanchez) is now, and was at all times material to this Complaint, an adult resident and citizen of Chicago, Cook County, Illinois. At all times material to this Complaint, Ms. Sanchez was, and she remains, the lawful spouse of Plaintiff Alonso Zaragoza, and she resided and continues to reside with him in the same household.

3. Defendant Taylor Fresh Foods, Inc. (hereinafter "Taylor Fresh") is, and was at all times material to this Complaint, a corporation organized and existing under the laws of the State of Delaware, with its headquarters in Salinas, California. At all times material to this Complaint, Taylor Fresh, acting either alone or jointly with Defendant Taylor Farms California, Inc., grew, processed, manufactured, packaged, supplied, and distributed the fresh lettuce products, including the shredded iceberg lettuce supplied to Taco Bell restaurants, that caused Plaintiffs' injuries and damages.

4. Defendant Taylor Farms California, Inc. (hereinafter "Taylor Farms") is, and was at all times material to this Complaint, a corporation organized and existing under the laws of the State of Delaware, with its headquarters in Salinas, California. At all times material to this Complaint, Taylor Farms, acting either alone or jointly with Defendant Taylor Fresh, grew, processed, manufactured, packaged, supplied, and distributed the fresh lettuce products, including the lettuce supplied to Taco Bell restaurants, that caused Plaintiffs' injuries and damages. Defendants Taylor Fresh and Taylor Farms are referred to collectively herein as the "Taylor Defendants."

5. Defendants John Doe Corporations 1-5, whose identities are currently unknown, are the manufacturers, distributors, importers, packagers, brokers, suppliers, and/or growers of the food products and/or their constituent ingredients that caused Plaintiffs' injuries and damages, as well as the illnesses of other individuals sickened as a result of the subject outbreak. These Defendants are in some manner responsible for the acts, occurrences, and transactions set forth herein and/or are the partners and/or alter ego(s) of the Defendants named herein, and are therefore legally liable to Plaintiffs. Plaintiffs will set forth the true names and capacities of the

fictitiously named Doe Defendants, together with appropriate specific charging allegations, when ascertained.

6. At all times material to this Complaint, the Taco Bell restaurant located at 5312 West Belmont Avenue, Chicago, Illinois 60641 (the "Subject Restaurant") purchased, received, prepared, and sold to the consuming public, including Mr. Zaragoza, food products containing the fresh lettuce products that the Taylor Defendants grew, processed, packaged, supplied, and distributed.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiffs are citizens of the State of Illinois. Defendants Taylor Fresh Foods, Inc. and Taylor Farms California, Inc. are citizens of the State of Delaware, where they are incorporated, and of the State of California, where they maintain their principal places of business. No Defendant is a citizen of the State of Illinois.

8. Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including the distribution, preparation, and sale of the contaminated food product that Mr. Zaragoza purchased and consumed, and Plaintiffs' resulting injuries. Cook County, Illinois, where the Subject Restaurant is located and where Plaintiffs reside, lies within the Eastern Division of this District.

## III. GENERAL FACTS & ALLEGATIONS

### A. The 2026 Multistate Cyclosporiasis Outbreak

9. On July 14, 2026, the Centers for Disease Control and Prevention ("CDC") issued a Health Alert Network Health Advisory (CDCHAN-00531) notifying clinicians, public health practitioners, and laboratorians of domestically acquired cyclosporiasis cases in multiple U.S. states. According to the CDC, since May 1, 2026, it had received reports of 1,645 confirmed domestic cases of cyclosporiasis and was aware of more than 5,100 additional cases requiring further analysis to confirm as domestically acquired—nearly 7,000 people nationwide. This total is substantially higher than the 249 cases reported nationally during the same period in 2025.

10. According to the CDC, the 1,645 lab-confirmed cases were reported by 34 states. The affected case-patients ranged in age from 2 to 95 years, with a median age of 44 years. Of the case-patients with available information, 141 (9%) were hospitalized. The CDC has recognized that, because cyclosporiasis is often underdiagnosed and underreported, the true number of illnesses is likely higher than the number reported.

11. Also on July 14, 2026, the CDC posted an outbreak investigation notice reporting that, as of July 13, 2026, more than 400 people infected with *Cyclospora* had been reported to the CDC in connection with a single multistate outbreak that appears to be epidemiologically linked, suggesting a common source of infection. Sick people in that outbreak reported the onset of symptoms on or after June 22, 2026.

12. The CDC, the U.S. Food and Drug Administration ("FDA"), and state and local health departments have been working together to investigate the multistate outbreak and to identify the source of illness. Previous cyclosporiasis outbreaks have repeatedly been linked to

the consumption of contaminated fresh produce, including leafy greens and fresh herbs. Public health officials identified lettuce or salad greens as a likely source of the multistate outbreak.

13. In early July 2026, Taco Bell restaurants posted signs at their counters informing customers that the chain could no longer serve lettuce, cilantro, onion, pico de gallo, or guacamole. Thereafter, as reported in the national press, federal and state health officials confirmed that they were investigating whether food products served at Taco Bell restaurants played a role in the multistate cyclosporiasis outbreak. The ingredients withdrawn by Taco Bell—lettuce, cilantro, onions, and the fresh produce used in its pico de gallo and guacamole—are among the fresh produce items historically implicated in *Cyclospora* outbreaks.

14. On July 16, 2026, the FDA issued an outbreak advisory reporting that the FDA and CDC, in collaboration with state and local partners, were investigating a multistate outbreak of *Cyclospora* illnesses linked to shredded iceberg lettuce served at Taco Bell locations. As of that date, 1,644 people infected with *Cyclospora* and reporting exposure to Taco Bell had been reported, with 94 hospitalizations. The FDA further reported that ingredient-level analyses of the meals eaten by case-patients who reported eating at Taco Bell indicated that 90% of those interviewed reported eating iceberg lettuce, and that the FDA's traceback investigation had identified convergence on a single supplier of iceberg lettuce from Mexico used by the Taco Bell locations where sick people ate before becoming ill.

15. On July 17, 2026, the FDA reported that its traceback investigation had identified that single supplier as Taylor Farms de Mexico, which provided the shredded iceberg lettuce used by the Taco Bell locations where sick people ate before becoming ill. That same day, Taylor Farms de Mexico announced that it was voluntarily removing all iceberg lettuce sourced from

central Mexico from the U.S. market, and Taylor Fresh initiated a recall of the implicated iceberg lettuce products, including products distributed to foodservice customers.

16. On July 24, 2026, the FDA reported that the outbreak had expanded to include illnesses from nine states—Illinois, Indiana, Kansas, Kentucky, Michigan, Ohio, Oklahoma, Pennsylvania, and West Virginia. Based on epidemiological information collected by the CDC, a total of 1,947 people infected with *Cyclospora* and reporting exposure to Taco Bell had been reported by those nine states, with illness onsets ranging from June 22, 2026 through July 20, 2026, and at least 98 hospitalizations. The FDA also reported that Taylor Fresh distributed the recalled iceberg lettuce products from June 29, 2026, through July 16, 2026 in twenty-eight states, including Illinois.

17. On August 5, 2026, the CDC reported that, as state and local health officials continued to interview additional case-patients, the outbreak had grown to include people who reported exposure either to Taco Bell or to the recalled Taylor Farms de Mexico iceberg lettuce. As of that date, a total of 6,358 outbreak-associated illnesses had been reported from fifteen states—the nine states previously identified plus Arkansas, Iowa, Missouri, Nebraska, New Hampshire, and North Carolina—with illness onsets from June 22, 2026 through July 31, 2026, at least 278 hospitalizations, and two deaths reported in Michigan.

18. On August 13, 2026, the CDC and FDA reported that the total case count associated with the multistate outbreak had risen to 9,481 illnesses reported from seventeen states, with the addition of Maine and Massachusetts. Illnesses linked to the outbreak began on June 14, 2026, and onset dates have continued through August 3, 2026, with at least 398 hospitalizations and two deaths reported. The outbreak includes people who reported exposure to processed iceberg lettuce from Taylor Farms de Mexico served or purchased at various locations, including

people who previously reported eating at Taco Bell. The FDA further reported that it had initiated an onsite inspection and sampling at Taylor Farms de Mexico in coordination with Mexican officials, and that distribution of the recalled iceberg lettuce to foodservice customers had been confirmed in at least thirty-one states, including Illinois, with possible further distribution to additional states.

19. The CDC and FDA have advised that the number of confirmed cases is expected to continue to rise notwithstanding the recall, because it can take as long as six weeks for the CDC and state officials to determine whether a sick person is part of this outbreak. The agencies have further advised that the true number of sick people in the outbreak is likely higher than the number reported, because some people recover without medical care and are never tested for *Cyclospora*, and that the outbreak may not be limited to the states with known illnesses.

**B. The Taylor Defendants Supplied the Contaminated Iceberg Lettuce Used by Taco Bell**

20. As part of the ongoing investigation into the 2026 multistate cyclosporiasis outbreak, public health investigators identified fresh shredded iceberg lettuce served at Taco Bell restaurants as the source of the outbreak and identified the Taylor Defendants as the growers, processors, packers, and suppliers of that lettuce. The Taylor Defendants grew, processed, packaged, and distributed the shredded iceberg lettuce that was supplied to Taco Bell restaurants and that is linked to the outbreak.

21. The iceberg lettuce supplied by the Taylor Defendants was distributed to Taco Bell restaurants in Illinois and in other states, including the Subject Restaurant in Chicago, Illinois, at which Mr. Zaragoza purchased and consumed the lettuce. Illinois is among the seventeen states in which the CDC and FDA have identified outbreak-associated illnesses, and is among the thirty-one states to which the Taylor Defendants distributed the recalled iceberg lettuce products.

### C. Cyclosporiasis and *Cyclospora* Infection

22. Cyclosporiasis is a gastrointestinal illness caused by the microscopic parasite *Cyclospora cayetanensis*. People become infected by consuming food or water contaminated with the parasite. The illness is not usually spread directly from person to person. Case counts typically rise during the spring and summer months, and the CDC considers May 1 through August 31 to be the annual cyclosporiasis season. Previous outbreaks have been linked to consuming contaminated fresh produce.

23. Symptoms of cyclosporiasis include frequent, watery diarrhea, along with loss of appetite, weight loss, bloating, stomach cramps and pain, increased gas, nausea, and fatigue. Less common symptoms include low-grade fever, body aches, headache, and vomiting. Without treatment, symptoms can follow a remitting-relapsing course that can last from a few days to a month or longer.

24. Laboratory detection of *Cyclospora* in stool can be challenging even in symptomatic patients, and standard ova-and-parasite examinations may not detect it reliably; specific diagnostic testing for *Cyclospora* must be requested. The recommended treatment for confirmed cyclosporiasis is a 7-to-10-day course of trimethoprim-sulfamethoxazole, sold under the brand name Bactrim. Illness can be severe, and complications can include dehydration, malabsorption, cholecystitis, and reactive arthritis.

25. Cyclosporiasis is entirely preventable through proper food-safety practices. Because *Cyclospora* contamination originates in the field and water before produce reaches the point of sale, and because chemical disinfection or ordinary washing may not fully eliminate the parasite, the burden of preventing cyclosporiasis rests on those who grow, handle, distribute, and sell fresh produce and the foods made from it.

### D. Plaintiff Mr. Zaragoza's Illness and Injuries

26. On Saturday, July 11, 2026, Mr. Zaragoza and his wife, Ms. Sanchez, drove to the Subject Restaurant located at 5312 West Belmont Avenue, Chicago, Illinois, where Mr. Zaragoza purchased a Chalupa Supreme box meal and Ms. Sanchez purchased a box meal of her own. Mr. Zaragoza paid for the meal through the Taco Bell mobile application, and the transaction is reflected in his payment and bank records.

27. The Chalupa Supreme that Mr. Zaragoza purchased from the Subject Restaurant contained fresh shredded iceberg lettuce, which he consumed as part of his meal at home that evening.

28. On the evening of Sunday, July 12, 2026, Mr. Zaragoza began experiencing symptoms of a *Cyclospora* infection. He became profoundly weak and developed a sudden and urgent need to use the bathroom, followed by diarrhea. He was forced to use the bathroom every hour to hour and a half throughout that night and into the following morning, and he was unable to sleep.

29. On Monday, July 13, 2026, Mr. Zaragoza reported to work despite his symptoms. By approximately noon he had become sweaty, feverish, and dizzy, and he was forced to lie down in the basement of the library where he works before leaving early and returning home. That same day, Mr. Zaragoza's diarrhea became bloody. He again could not sleep that night.

30. On Tuesday, July 14, 2026, Mr. Zaragoza woke weak and exhausted, with a continued urgent need for the bathroom, and was unable to work. On Wednesday, July 15, 2026, Mr. Zaragoza felt well enough in the morning to attempt to return to work, but by approximately 11:00 a.m. he again became too ill to continue and was forced to lie down.

31. On the evening of July 15, 2026, Mr. Zaragoza's symptoms became so severe that he went to the emergency department at Northwestern Memorial Hospital. While there, Mr. Zaragoza was examined, placed on intravenous fluids, and had multiple samples of blood drawn. Mr. Zaragoza was discharged at approximately 1:00 p.m. on July 16, 2026, with instructions to maintain fluids and electrolytes.

32. Mr. Zaragoza's symptoms throughout the following days included frequent watery diarrhea, bloody diarrhea, nausea, stomach cramping, fever to 102 degrees Fahrenheit, muscle aches, profound fatigue and weakness, dizziness, dehydration, sleeplessness, and a weight loss of approximately seven pounds.

33. On July 24, 2026, Mr. Zaragoza sought further medical care at Metro Urgent Care, 5406 West Fullerton Avenue, Chicago, Illinois, in order to obtain antibiotic treatment for his continuing symptoms.

34. On July 26, 2026, a stool specimen was collected from Mr. Zaragoza at Midwest Express Clinic–Belmont in Chicago, Illinois, and submitted for *Cyclospora* examination. On August 4, 2026, results of the stool specimen returned, confirming Mr. Zaragoza was infected with *Cyclospora cayetanensis*. Mr. Zaragoza was thereafter treated with antibiotics.

35. Mr. Zaragoza is employed as a librarian by the Chicago Public Library. As a direct and proximate result of his *Cyclospora* infection, he was unable to work several days throughout July, was required to leave work early on other days, and was required to expend paid time off.

36. In addition to his employment with the Chicago Public Library, Mr. Zaragoza works outside of his regular working hours as a social-media content creator, a substantial part of which consists of visiting restaurants and producing paid restaurant reviews. As a direct and proximate result of his *Cyclospora* infection, Mr. Zaragoza was unable to eat restaurant food, was

unable to perform that work, and lost the income associated with each engagement he was unable to fulfill.

37. Ultimately, as a direct and proximate result of his *Cyclospora* infection, Mr. Zaragoza suffered physical illness, pain and suffering, emotional distress, medical and medical-related expenses, pharmaceutical expenses, lost wages and lost income, diminished earning capacity, a diminished quality of life, and other injuries.

### E. Plaintiff Mrs. Sanchez's Loss

38. As a direct and proximate result of Mr. Zaragoza's *Cyclospora* infection, Ms. Sanchez lost the society, companionship, and services of her husband. Ms. Sanchez was unable to sleep for the first five days of Mr. Zaragoza's illness; she altered her household's diet and replaced all pre-prepared meals and breakfasts to accommodate her husband's need for an almost entirely liquid diet; she made repeated trips to purchase appropriate food and electrolytes for him; she repeatedly cleaned the bathroom and bedroom as a consequence of his illness; she drove him to the emergency department and remained with him overnight; and she took time away from her personal and work-related obligations in order to care for him.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION – STRICT PRODUCT LIABILITY
### ALONSO ZARAGOZA v. TAYLOR FRESH FOODS, INC. ("TAYLOR FRESH")

39. Plaintiff realleges and incorporates by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

40. The food product at issue in this action—the fresh shredded iceberg lettuce that Mr. Zaragoza consumed—was grown, harvested, processed, manufactured, packaged, marketed, distributed, and/or sold by and through Defendant TAYLOR FRESH.

41. Defendant TAYLOR FRSH was at all material times regularly engaged in the business of growing, processing, packaging, supplying, distributing, and selling lettuce and other fresh produce, and of placing those products into the stream of commerce for use by the consuming public, including Mr. Zaragoza. Such conduct was solely for commercial purposes.

42. At the time the food product at issue left the TAYLOR FRESH's control, it was defective and unreasonably dangerous for its ordinary and expected use because it was contaminated with *Cyclospora cayetanensis*, a pathogenic parasite, and because it was not adequately grown, processed, packaged, distributed, or marketed to minimize the risk of illness and injury.

43. The food product at issue reached Mr. Zaragoza without substantial change in the condition in which it left Defendant TAYLOR FRESH's control, and it remained defective and unreasonably dangerous at all times thereafter until it caused his illness and damages.

44. At the time the food product at issue was placed into the stream of commerce, it was reasonably expected and foreseeable to the Defendant TAYLOR FRESH that the product would be used by persons such as Mr. Zaragoza in the manner in which food is ordinarily used, that is, for human consumption. Mr. Zaragoza used the product in precisely that manner.

45. The defective and unreasonably dangerous condition of the food product at issue was the direct and proximate cause of Mr. Zaragoza's *Cyclospora* infection and of Plaintiffs' resulting injuries and damages, and the Defendants are therefore strictly liable to Plaintiffs.

46. As direct and proximate result of one or more of the foregoing acts of Defendant TAYLOR FRESH, Plaintiff sustained serious and permanent injuries.

47. As a further direct and proximate result of Defendant TAYLOR FRESH's acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount

to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FRESH FOODS, INC., in an amount in excess $75,000.00, for attorney's fees and costs, and for any further relief this Honorable Court deems just and proper.

**SECOND CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY**
**ALONSO ZARAGOZA v. TAYLOR FRESH FOODS, INC. ("TAYLOR FRESH")**

48. Plaintiffs realleges and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

49. The Defendant TAYLOR FRESH owes Mr. Zaragoza a duty to grow, process, manufacture, package, distribute, and sell a food product that conformed to their express warranty as proffered on their labels and/or promises to the public.

50. The Defendants expressly warranted, through the sale and distribution of their food products into the stream of commerce and through the statements and conduct of their employees and agents, that the fresh lettuce products they supplied were of merchantable quality, were fit for human consumption, and were not adulterated or otherwise injurious to health.

51. The food product at issue was contaminated with *Cyclospora cayetanensis*. Such a contaminated food product would not pass without objection in the trade and was not fit for the ordinary purposes for which such goods are used and for which they expressly affirmed and/or promised the product could be used for: consumption.

52. The Defendant TAYLOR FRESH's warranty extends to Mr. Zaragoza, who was injured in person by the breach of those warranties and who relied upon such when purchasing the food product that he consumed and assumed and believed was safe to consume/eat.

53. As a direct and proximate result of the Defendant TAYLOR FRESH's breach of express warranty, Mr. Zaragoza suffered a *Cyclospora* infection and the injuries and damages described herein.

54. As a further direct and proximate result of Defendant TAYLOR FRESH's acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FRESH FOODS, INC., in an amount in

excess $75,000.00, for attorney's fees and costs, and for any further relief this Honorable Court deems just and proper.

**THIRD CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY**
**ALONSO ZARAGOZA v. TAYLOR FRESH FOODS, INC. ("TAYLOR FRESH")**

55. Plaintiff realleges and incorporates by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

56. The Defendant TAYLOR FRESH owes Mr. Zaragoza a duty to grow, process, manufacture, package, distribute, and sell a food product that conformed to their implied warranties, including the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

57. The Defendant TAYLOR FRESH impliedly warranted, through the sale and distribution of their food products into the stream of commerce and through conduct of their employees and agents, that the fresh lettuce products they supplied were of merchantable quality, were fit for human consumption, and were not adulterated or otherwise injurious to health.

58. The food product at issue was contaminated with *Cyclospora cayetanensis*. Such a contaminated food product would not pass without objection in the trade and was not fit for the ordinary purposes for which such goods are used. The sale and distribution of that product was therefore in breach of the implied warranty of merchantability.

59. Because of its contaminated condition, the food product at issue was not fit for the use and purpose intended by either Plaintiffs or the Defendants, that is, human consumption. The sale and distribution of that product was therefore in breach of the implied warranty of fitness for its intended purpose.

60. The Defendant TAYLOR FRESH's implied warranty extends to Mr. Zaragoza, who was injured in person by the breach of those warranties.

61. As a direct and proximate result of the Defendants TAYLOR FRESH's breaches of implied warranties, Mr. Zaragoza suffered a *Cyclospora* infection and the injuries and damages described herein.

62. As a further direct and proximate result of Defendant TAYLOR FRESH's acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FRESH FOODS, INC., in an amount in excess $75,000.00, for attorney's fees and costs, and for any further relief this Honorable Court deems just and proper.

**FOURTH CAUSE OF ACTION – NEGLIGENCE**
**ALONSO ZARAGOZA v. TAYLOR FRESH FOODS, INC. ("TAYLOR FRESH")**

63. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

64. The Defendant TAYLOR FRESH owed a duty to the ultimate consumers of their food products, including Mr. Zaragoza, to use reasonable care in the growing, harvesting, processing, packaging, distribution, and sale of those products, and to prevent or eliminate the

risk that those products would be contaminated with *Cyclospora cayetanensis* or any other pathogen.

65. The Defendant TAYLOR FRESH owed a duty to source, use, and supply raw materials, agricultural inputs, and agricultural and processing practices that complied with applicable federal, state, and local laws, ordinances, and regulations and with industry standards, and to source and supply produce that was clean, wholesome, free from adulteration, and safe for human consumption.

66. The Defendant TAYLOR FRESH owed a duty to comply with all statutory and regulatory provisions pertaining to the manufacture, processing, distribution, storage, labeling, and sale of their food products, including the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., which prohibits the manufacture, sale, and distribution of any adulterated food, and the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1 *et seq*. Under 410 ILCS 620/3.1, the manufacture, sale or delivery, holding or offering for sale of any food that is adulterated is a prohibited act in the State of Illinois.

67. Under 410 ILCS 620/10, a food is adulterated if, among other things, it bears or contains any poisonous or deleterious substance which may render it injurious to health; if it consists in whole or in part of a diseased, contaminated, filthy, putrid or decomposed substance, or if it is otherwise unfit for food; or if it has been produced, prepared, packed or held under unsanitary conditions whereby it may have become contaminated with filth or whereby it may have been rendered diseased, unwholesome or injurious to health. The food product that the Defendants grew, processed, packaged, distributed, and sold, and that Mr. Zaragoza purchased and consumed, was adulterated within the meaning of these provisions because it bore and contained *Cyclospora cayetanensis*, a pathogenic parasite that rendered it injurious to health,

because it was contaminated and otherwise unfit for food, and because it was produced, prepared, packed, or held under unsanitary conditions.

68. The Defendant TAYLOR FRESH breached the duties they owed to Mr. Zaragoza by committing the following acts and omissions of negligence, among others:

a. Failing to adequately maintain or monitor the sanitary condition of their growing and harvesting operations, processing facilities, equipment, products, and employees;

b. Failing to implement and enforce adequate agricultural water, sanitation, worker hygiene, and harvesting practices sufficient to prevent *Cyclospora* contamination of fresh produce;

c. Failing to apply food safety policies and procedures that met industry standards for the safe and sanitary production, processing, and packaging of fresh produce;

d. Failing to adequately verify that their own suppliers and growers, including growers in Mexico, were employing food safety practices sufficient to prevent *Cyclospora* contamination of the produce they supplied;

e. Failing to adequately test, inspect, or otherwise verify the safety of the iceberg lettuce they distributed to foodservice customers;

f. Failing to take reasonable measures, given the known history of prior outbreaks of *Cyclospora* and other pathogens on fresh produce and leafy greens, to ensure that the lettuce they supplied was not grown, processed, or handled under conditions known, or that reasonably should have been known, to the food industry to be unsafe;

g. Failing to warn food service customers and ultimate consumers, including Mr. Zaragoza, that their product might contain *Cyclospora cayetanensis* and should not be consumed;

h. Failing to timely withdraw, recall, or otherwise remove the contaminated iceberg lettuce from the stream of commerce; and

i. Failing to properly train, supervise, and monitor their employees and agents, and the employees and agents of their growers and subcontractors, in the prevention of *Cyclospora* contamination.

69. Mr. Zaragoza is among the class of persons the above-referenced statutory and regulatory provisions were designed to protect, and the harm he suffered—foodborne illness caused by adulterated food—is precisely the harm those provisions were intended to prevent.

70. As a direct and proximate result of the Defendant TAYLOR FRESH's negligence and of their violation of statutes and regulations designed to protect consumers from contaminated food, Mr. Zaragoza suffered a *Cyclospora* infection and the injuries and damages described herein, and Ms. Sanchez suffered the losses described herein.

71. As a further direct and proximate result of Defendant TAYLOR FRESH's acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FRESH FOODS, INC., in an amount in excess $75,000.00, and for any further relief this Honorable Court deems just and proper.

**FIFTH CAUSE OF ACTION – LOSS OF CONSORTIUM**
**JADHIRA SANCHEZ v. TAYLOR FRESH FOODS, INC. ("TAYLOR FRESH")**

72. Plaintiff JADHIRA SANCHEZ realleges and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

73. At all times material to this Complaint, Ms. Sanchez was the lawful spouse of Mr. Zaragoza.

74. As a direct and proximate result of the Defendant TAYLOR FRESH's conduct described herein and of the injuries sustained by Mr. Zaragoza, Ms. Sanchez has been deprived of the society, companionship, affection, and services of her husband, and has been required to undertake his care and the additional household burdens occasioned by his illness.

75. Ms. Sanchez is entitled to recover damages for her loss of consortium in an amount to be proven at trial.

WHEREFORE, the Plaintiff, JADHIRA SANCHEZ requests that this Court enter judgment in her favor and against Defendant, TAYLOR FRESH FOODS, INC., in an amount in excess $75,000.00, and for any further relief this Honorable Court deems just and proper.

**SIXTH CAUSE OF ACTION – STRICT PRODUCT LIABILITY**
**ALONSO ZARAGOZA v. TAYLOR FARMS CALIFORNIA, INC., ("TAYLOR FARMS")**

76. Plaintiff realleges and incorporates by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

77. The food product at issue in this action—the fresh shredded iceberg lettuce that Mr. Zaragoza consumed—was grown, harvested, processed, manufactured, packaged, marketed, distributed, and/or sold by and through Defendant TAYLOR FARMS.

78. Defendant TAYLOR FARMS was at all material times regularly engaged in the business of growing, processing, packaging, supplying, distributing, and selling lettuce and other fresh produce, and of placing those products into the stream of commerce for use by the consuming public, including Mr. Zaragoza. Such conduct was solely for commercial purposes.

79. At the time the food product at issue left the TAYLOR FARMS' control, it was defective and unreasonably dangerous for its ordinary and expected use because it was contaminated with *Cyclospora cayetanensis*, a pathogenic parasite, and because it was not adequately grown, processed, packaged, distributed, or marketed to minimize the risk of illness and injury.

80. The food product at issue reached Mr. Zaragoza without substantial change in the condition in which it left Defendant TAYLOR FARMS' control, and it remained defective and unreasonably dangerous at all times thereafter until it caused his illness and damages.

81. At the time the food product at issue was placed into the stream of commerce, it was reasonably expected and foreseeable to the Defendant TAYLOR FARMS that the product would be used by persons such as Mr. Zaragoza in the manner in which food is ordinarily used, that is, for human consumption. Mr. Zaragoza used the product in precisely that manner.

82. The defective and unreasonably dangerous condition of the food product at issue was the direct and proximate cause of Mr. Zaragoza's *Cyclospora* infection and of Plaintiffs' resulting injuries and damages, and the Defendants are therefore strictly liable to Plaintiffs.

83. As direct and proximate result of one or more of the foregoing acts of Defendant TAYLOR FARMS, Plaintiff sustained serious and permanent injuries.

84. As a further direct and proximate result of Defendant TAYLOR FARMS' acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FARMS CALIFORNIA, INC., in an amount in excess $75,000.00, for attorney's fees and costs, and for any further relief this Honorable Court deems just and proper.

**SEVENTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY ALONSO ZARAGOZA v. TAYLOR FARMS CALIFORNIA, INC., ("TAYLOR FARMS")**

85. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

86. The Defendant TAYLOR FARMS owes Mr. Zaragoza a duty to grow, process, manufacture, package, distribute, and sell a food product that conformed to their express warranty as proffered on their labels and/or promises to the public.

87. The Defendants expressly warranted, through the sale and distribution of their food products into the stream of commerce and through the statements and conduct of their employees and agents, that the fresh lettuce products they supplied were of merchantable quality, were fit for human consumption, and were not adulterated or otherwise injurious to health.

88. The food product at issue was contaminated with *Cyclospora cayetanensis*. Such a contaminated food product would not pass without objection in the trade and was not fit for the ordinary purposes for which such goods are used and for which they expressly affirmed and/or promised the product could be used for: consumption.

89. The Defendant TAYLOR FARMS' warranty extend to Mr. Zaragoza, who was injured in person by the breach of those warranties and who relied upon such when purchasing the food product that he consumed and assumed and believed was safe to consume/eat.

90. As a direct and proximate result of the Defendant TAYLOR FARMS' breach of express warranty, Mr. Zaragoza suffered a *Cyclospora* infection and the injuries and damages described herein.

91. As a further direct and proximate result of Defendant TAYLOR FARMS' acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and

all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FARMS CALIFORNIA, INC., in an amount in excess $75,000.00, for attorney's fees and costs, and for any further relief this Honorable Court deems just and proper.

**EIGHTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY ALONSO ZARAGOZA v. TAYLOR FARMS CALIFORNIA, INC., ("TAYLOR FARMS")**

92. Plaintiff realleges and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

93. The Defendant TAYLOR FARMS owes Mr. Zaragoza a duty to grow, process, manufacture, package, distribute, and sell a food product that conformed to their implied warranties, including the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

94. The Defendant TAYLOR FARMS impliedly warranted, through the sale and distribution of their food products into the stream of commerce and through conduct of their employees and agents, that the fresh lettuce products they supplied were of merchantable quality, were fit for human consumption, and were not adulterated or otherwise injurious to health.

95. The food product at issue was contaminated with *Cyclospora cayetanensis*. Such a contaminated food product would not pass without objection in the trade and was not fit for the ordinary purposes for which such goods are used. The sale and distribution of that product was therefore in breach of the implied warranty of merchantability.

96. Because of its contaminated condition, the food product at issue was not fit for the use and purpose intended by either Plaintiffs or the Defendants, that is, human consumption. The sale and distribution of that product was therefore in breach of the implied warranty of fitness for its intended purpose.

97. The Defendant TAYLOR FARMS' implied warranty extend to Mr. Zaragoza, who was injured in person by the breach of those warranties.

98. As a direct and proximate result of the Defendants TAYLOR FARMS' breaches of implied warranties, Mr. Zaragoza suffered a *Cyclospora* infection and the injuries and damages described herein.

99. As a further direct and proximate result of Defendant TAYLOR FARMS' acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FARMS CALIFORNIA, INC., in an amount in excess $75,000.00, for attorney's fees and costs, and for any further relief this Honorable Court deems just and proper.

**NINTH CAUSE OF ACTION – NEGLIGENCE**
**ALONSO ZARAGOZA v. TAYLOR FARMS CALIFORNIA, INC., ("TAYLOR FARMS")**

100. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

101. The Defendant TAYLOR FARMS owed a duty to the ultimate consumers of their food products, including Mr. Zaragoza, to use reasonable care in the growing, harvesting, processing, packaging, distribution, and sale of those products, and to prevent or eliminate the risk that those products would be contaminated with *Cyclospora cayetanensis* or any other pathogen.

102. The Defendant TAYLOR FARMS owed a duty to source, use, and supply raw materials, agricultural inputs, and agricultural and processing practices that complied with applicable federal, state, and local laws, ordinances, and regulations and with industry standards, and to source and supply produce that was clean, wholesome, free from adulteration, and safe for human consumption.

103. The Defendant TAYLOR FARMS owed a duty to comply with all statutory and regulatory provisions pertaining to the manufacture, processing, distribution, storage, labeling, and sale of their food products, including the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., which prohibits the manufacture, sale, and distribution of any adulterated food, and the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1 *et seq*. Under 410 ILCS 620/3.1, the manufacture, sale or delivery, holding or offering for sale of any food that is adulterated is a prohibited act in the State of Illinois.

104. Under 410 ILCS 620/10, a food is adulterated if, among other things, it bears or contains any poisonous or deleterious substance which may render it injurious to health; if it consists in whole or in part of a diseased, contaminated, filthy, putrid or decomposed substance,

or if it is otherwise unfit for food; or if it has been produced, prepared, packed or held under unsanitary conditions whereby it may have become contaminated with filth or whereby it may have been rendered diseased, unwholesome or injurious to health. The food product that the Defendants grew, processed, packaged, distributed, and sold, and that Mr. Zaragoza purchased and consumed, was adulterated within the meaning of these provisions because it bore and contained *Cyclospora cayetanensis*, a pathogenic parasite that rendered it injurious to health, because it was contaminated and otherwise unfit for food, and because it was produced, prepared, packed, or held under unsanitary conditions.

105. The Defendant TAYLOR FARMS breached the duties they owed to Mr. Zaragoza by committing the following acts and omissions of negligence, among others:

j. Failing to adequately maintain or monitor the sanitary condition of their growing and harvesting operations, processing facilities, equipment, products, and employees;

k. Failing to implement and enforce adequate agricultural water, sanitation, worker hygiene, and harvesting practices sufficient to prevent *Cyclospora* contamination of fresh produce;

l. Failing to apply food safety policies and procedures that met industry standards for the safe and sanitary production, processing, and packaging of fresh produce;

m. Failing to adequately verify that their own suppliers and growers, including growers in Mexico, were employing food safety practices sufficient to prevent *Cyclospora* contamination of the produce they supplied;

n. Failing to adequately test, inspect, or otherwise verify the safety of the iceberg lettuce they distributed to foodservice customers;

o. Failing to take reasonable measures, given the known history of prior outbreaks of *Cyclospora* and other pathogens on fresh produce and leafy greens, to ensure that the lettuce they supplied was not grown, processed, or handled under conditions known, or that reasonably should have been known, to the food industry to be unsafe;

p. Failing to warn food service customers and ultimate consumers, including Mr. Zaragoza, that their product might contain *Cyclospora cayetanensis* and should not be consumed;

q. Failing to timely withdraw, recall, or otherwise remove the contaminated iceberg lettuce from the stream of commerce; and

r. Failing to properly train, supervise, and monitor their employees and agents, and the employees and agents of their growers and subcontractors, in the prevention of *Cyclospora* contamination.

106. Mr. Zaragoza is among the class of persons the above-referenced statutory and regulatory provisions were designed to protect, and the harm he suffered—foodborne illness caused by adulterated food—is precisely the harm those provisions were intended to prevent.

107. As a direct and proximate result of the Defendant TAYLOR FARMS' negligence and of their violation of statutes and regulations designed to protect consumers from contaminated food, Mr. Zaragoza suffered a *Cyclospora* infection and the injuries and damages described herein, and Ms. Sanchez suffered the losses described herein.

108. As a further direct and proximate result of Defendant TAYLOR FARMS' acts, Mr. Zaragoza has suffered general, special, incidental, and consequential damages in an amount to be fully proven at the time of trial. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish,

past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

WHEREFORE, the Plaintiff, ALONSO ZARAGOZA requests that this Court enter judgment in his favor and against Defendant, TAYLOR FARMS CALIFORNIA, INC., in an amount in excess $75,000.00, and for any further relief this Honorable Court deems just and proper.

**TENTH CAUSE OF ACTION – LOSS OF CONSORTIUM**
**JADHIRA SANCHEZ v. TAYLOR FARMS CALIFORNIA, INC., ("TAYLOR FARMS")**

109. Plaintiff JADHIRA SANCHEZ realleges and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

110. At all times material to this Complaint, Ms. Sanchez was the lawful spouse of Mr. Zaragoza.

111. As a direct and proximate result of the Defendant TAYLOR FARMS' conduct described herein and of the injuries sustained by Mr. Zaragoza, Ms. Sanchez has been deprived of the society, companionship, affection, and services of her husband, and has been required to undertake his care and the additional household burdens occasioned by his illness.

112. Ms. Sanchez is entitled to recover damages for her loss of consortium in an amount to be proven at trial.

WHEREFORE, the Plaintiff, JADHIRA SANCHEZ requests that this Court enter judgment in her favor and against Defendant, TAYLOR FARMS CALIFORNIA, INC., in an

amount in excess $75,000.00, and for any further relief this Honorable Court deems just and proper.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ALONSO ZARAGOZA and JADHIRA SANCHEZ, by and through their attorneys of record, and for their causes of action articulated herein against Defendants TAYLOR FRESH FOODS, INC., TAYLOR FARMS CALIFORNIA, INC., AND JOHN DOE CORPORATIONS 1-5, jointly and collectively pray for judgment against Defendants, jointly and severally, as follows:

A. For compensation for all general, special, incidental, and consequential damages suffered by Plaintiffs as a result of Defendants' conduct, in an amount to be proven at trial and where proper as articulated;

B. For prejudgment and post-judgment interest as allowed by law;

C. For Plaintiffs' costs and disbursements incurred herein, and for reasonable attorneys' fees to the fullest extent allowed by law and where proper as articulated;

D. For leave to amend or modify this Complaint as necessary or appropriate after additional or further discovery is completed in this matter and after all appropriate parties have been served; and

E. For such other and further relief as this Court deems just and equitable.

## VI. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED August 21, 2026.

NEWLAND & NEWLAND LLP

By: */s/ Erin A. Adamski*
Gary A. Newland
Erin A. Adamski
ARDC Nos. 6217146 / 6317891
121 S. Wilke Road, Ste. 301
Arlington Heights, IL 60005
Telephone: (847) 797-8000
gary@newlandlaw.com
erin@newlandlaw.com
sandi@newlandlaw.com

*Counsel for Plaintiff*

MARLER CLARK, INC., PS

By: */s/ William D. Marler*
William D. Marler
ARDC No. 6318749
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
Telephone: (800) 884-9840
bmarler@marlerclark.com
*(Pro Hac Vice pending)*